**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VINCENT S. LONG,**

                              **9:17-cv-916**
              **Plaintiff,**        **(GLS/TWD)**

        **v.**

**ANTHONY J. ANNUCCI et al.,**

                 **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hoffmann, Hubert Law Firm | TERRANCE J. HOFFMANN, |
| 4629 Onondaga Boulevard | ESQ. |
| Syracuse, NY 13219 | |
| **FOR THE DEFENDANTS:** | |
| New York State Attorney General | JORGE A. RODRIGUEZ, ESQ. |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Vincent S. Long commenced this action pursuant to 42

U.S.C. § 1983 by filing a pro se complaint alleging that defendants David

Dinello, Nunzio Doldo, Michelle Nitschke, and Alson Taylor violated his

Eighth Amendment rights.  (Compl., Dkt. No. 1.)  Long also brought claims against defendant Anthony J. Annucci under Title II of the Americans with Disabilities Act (ADA)[1] and Section 504 of the Rehabilitation Act of 1973[2]. (*Id.*)  Defendants now move for summary judgment.  (Dkt. No. 108.)  For the reasons that follow, the motion is granted.

## II.  **Background**

**A.**    **Facts[3]**

Long was incarcerated at Cape Vincent Correctional Facility, a prison within New York State Department of Corrections and Community Supervision (DOCCS), from 2014 to 2016.  (Defs.' Statement of Material Facts (SMF) ¶¶ 2-3, Dkt. No. 108, Attach. 8.)  Annucci served as the Commissioner of DOCCS during all relevant times.  (*Id.* ¶ 4.)

*1. Dinello's Medical Determinations*

While at Cape Vincent, Long experienced plantar fasciitis, hip pain, severe osteoarthritis, back pain, and headaches.  (*Id.* ¶¶ 19-20.)  Dinello

---

[1]  *See* 42 U.S.C. §§ 12131-65.

[2]  *See* 29 U.S.C. § 794.

[3]  Unless otherwise noted, the facts are not in dispute.  In accordance with N.D.N.Y. L.R. 56.1(b), the court deems admitted any properly supported facts from defendants' Statement of Material Facts that Long failed to specifically controvert.

worked for DOCCS as a medical doctor and was tasked with reviewing speciality medical requests.  (*Id.* ¶¶ 12-13, 16.)  Dr. Manuel Palao, Long's treating physician at Cape Vincent, sent Dinello requests for Long to receive speciality medical treatment on four occasions.  (*Id.* ¶¶ 17-18, 35, 50, 61, 68.)

First, in September 2014, Dr. Palao requested that Long receive an orthopedics consultation for his osteoarthritis.  (*Id.* ¶ 35.)  Dinello reviewed Long's medical file and deferred the request, instead recommending that Long undergo physical therapy first.  (*Id.* ¶ 36.)  Second, in October 2014, Dr. Palao requested that Long receive custom orthotic footwear to treat his plantar fasciitis.  (*Id.* ¶ 50.)  After reviewing Long's medical file, Dinello deferred the request, recommending that Long first try using insoles to be ordered from a local medical provider.  (*Id.* ¶ 51.)  Dinello believed that using insoles prior to custom orthotic footwear was a reasonable treatment approach.  (*Id.* ¶ 52.)  Third, in December 2014, Dr. Palao requested that Long be provided an orthopedic consultation to address his osteoarthritis. (*Id.* ¶ 61.)  Dinello deferred the request because he wanted to first see if the physical therapy Long was undergoing and special-issue orthopedic boots Long had received would improve his condition.  (*Id.* ¶¶ 62-63.)

Finally, in March 2015, Dr. Palao requested that Long be ordered orthoses for both feet.  (*Id.* ¶ 68.)  Defendants claim that Dinello deferred the request because he wanted to order insoles and see if they improved Long's condition before ordering more advanced treatment, such as orthoses.  (*Id.* ¶¶ 69-70.)  Long claims that Dinello deferred the request out of retaliation for Long's multiple and continuing medical requests.  (Dkt. No. 112 ¶ 29.)

*2. ASAT Dorm Conditions*

The Alcohol and Substance Abuse Treatment (ASAT) dorm is a housing block at Cape Vincent where residents participate in counseling programs to treat alcohol and substance abuse.  (Defs.' SMF ¶ 127.) Nitschke and Taylor were employed by DOCCS to provide counseling services in the ASAT dorm.  (*Id.* ¶¶ 8-11,136,145.)

DOCCS moved Long to the ASAT dorm in June 2015.  (*Id.* ¶ 128.) At the time he was moved, Long possessed a medical pass that exempted him from attending programs until September 2015.  (*Id.* ¶¶ 71-72; Dkt. No. 112, Attach. 2 at Ex. 3.)  Long spent approximately six weeks in the ASAT

dorm and was transferred out in August 2015.[4]  (Defs.' SMF ¶ 132.)

Defendants contend that for the majority of Long's time in the ASAT dorm, he was not required to participate in programming or attend any vocational assignments.  (*Id.* ¶ 133.)  Long contends that he was required to participate in all programs and vocational assignments, resulting in more physical pain.  (Dkt. No. 112 ¶ 28.)  Nevertheless, during the time Long resided in the ASAT dorm, Long received medical treatment and had available to him the facility medical services through the usual procedures.  (Defs.' SMF ¶ 134.)  While at the ASAT dorm, Long submitted written grievances that were reviewed by Doldo, the Superintendent of Cape Vincent.  (*Id.* ¶¶ 156-57.)  Before Long was transferred out of the ASAT dorm, Doldo responded to Long's grievances, finding that Long's medical issues warranted some programming restrictions that had already been addressed by DOCCS medical staff.  (*Id.* ¶ 174.)

*3. Long's Accommodation Request*

Long submitted a written request for reasonable accommodations to DOCCS in February 2016.  (*Id.* ¶ 182; Dkt. No. 108, Attach. 6 at Ex. 3.)

---

[4] Defendants claim that Long was transferred out of the ASAT dorm on August 4, 2015.  (Defs.' SMF ¶ 132.)  Long claims that he was transferred out on August 10, 2015.  (Dkt. No. 112, Attach. 2 ¶ 23.)

Long's request sought medical treatment, orthopedic equipment, facilities with high toilets and grab bars, and access to programming.  (Dkt. No. 108, Attach. 6 at Ex. 3.)

DOCCS granted Long's request for access to high toilets and grab bars and admitted him to the infirmary.  (*Id.*)  However, DOCCS denied Long's request for orthopedic equipment and determined that Long would not be able to attend programming while housed in the infirmary.  (*Id.*)  Long remained in the infirmary for approximately six months—and attended ten scheduled medical appointments—before DOCCS transferred him to Wyoming Correctional Facility, a handicap-accessible facility.  (Defs.' SMF ¶¶ 185, 187, 189.)

## B.   <u>Procedural History</u>

After the court dismissed several of Long's claims pursuant to 28 U.S.C. § 1915(e), (Dkt. No. 4), Long filed an amended complaint in 2018 and a second amended complaint in 2019.  (Dkt. Nos. 27, 37.)  The court rejected Long's second amended complaint under 28 U.S.C § 1915(e), deeming Long's first amended complaint, (Dkt. No. 27), to be the operative pleading.  (Dkt. No. 48.)  Long's remaining claims are as follows: (1) an Eighth Amendment medical indifference claim against Dinello; (2) an

6

Eighth Amendment conditions-of-confinement claim related to Long's confinement in the ASAT dorm against Doldo, Nitschke, and Taylor; and (3) ADA and Rehabilitation Act claims against Annucci in his official capacity.  (*Id.*)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

#### A.    Medical Indifference Claim

Long argues that his plantar fasciitis was a serious medical condition to which Dinello was deliberately indifferent by deferring medical treatment recommended by Dr. Palao.  (Dkt. No. 112, Attach. 4 at 3-5.)

Defendants argue that Long received adequate medical care and that Long was not entitled to his preferred treatment methods.  (Dkt. No. 108, Attach. 9 at 15-17.)  Defendants also contend that Dinello lacked a culpable state of mind because Dinello recommended more conservative

7

treatment with the goal of providing appropriate care.  (*Id.*)

To establish an Eighth Amendment claim arising out of medical indifference, a plaintiff must prove (1) that he did not receive adequate medical care and that the inadequacy was "in objective terms, sufficiently serious," and (2) that the defendant acted "with a sufficiently culpable state of mind."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

A treatment deferral is a sufficiently serious deprivation of adequate medical care only if it unreasonably creates "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted); *see Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

A prison physician has a sufficiently culpable state of mind only if the physician "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)*; see Salahuddin*, 467 F.3d at 280 (noting that the required "mental state [is] equivalent to subjective recklessness, as the term is used in criminal law") (citing *Farmer*, 511 U.S. at 839-40).  Because "'only the unnecessary and

wanton infliction of pain implicates the Eighth Amendment,'" *Farmer*, 511 U.S. at 834 (citation omitted), a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Instead, the prison physician "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Accordingly, a physician cannot be liable if they "'sincerely and honestly believed'" that their conduct was "'medically justifiable.'"  *Salahuddin*, 467 F.3d at 281 (quoting *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005)); *cf. Chance*,143 F.3d at 704 (noting that an "allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment").

Here, assuming without deciding that Dinello's deferrals were sufficiently serious deprivations of adequate medical care, no reasonable jury could conclude that Dinello possessed a culpable state of mind. Dinello cannot be liable under the Eighth Amendment for his October

2014 and December 2014 deferral determinations because the parties do not dispute that Dinello believed that his determinations were reasonable and medically justifiable.  (Defs.' SMF ¶¶ 50-52, 61-63; Pl.'s SMF ¶¶ 50-52, 61-63, Dkt. No. 112, Attach. 3.)

The only remaining conduct that is the subject of Long's medical indifference claim is Dinello's September 2014 and March 2015 deferrals. Nothing in the record undermines Dinello's statements, (Dkt. No. 108, Attach. 1 ¶¶ 18, 25-27, 31), that he made both deferrals based on what he believed was reasonable medical judgment and with the goal of providing appropriate care.  *See Salahuddin*, 467 F.3d at 281 ("The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere.")  To the extent that Dinello's deferrals conflicted with Dr. Palao's requested recommendations, that tension does not establish the required mental state to support Long's claim.  *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment . . . [and] does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state

court . . . ."); *McKenna v. Wright*, No. 01 Civ. 6571, 2002 WL 338375, at

*27 (S.D.N.Y. Mar. 4, 2002) ("[C]ourts have repeatedly held that a dispute

between two doctors as to the proper course of medical treatment will not

give rise to an Eighth Amendment violation.") (collecting cases) (internal

quotation marks and citations omitted).  Moreover, Dinello's subjective

recklessness cannot be inferred by the presence of an obvious risk

because—outside of conclusory statements from medical experts, (Dkt.

No. 112, Attach. 1 ¶¶ 16,18,19; Dkt. No. 112, Attach. 2 ¶ 15)—Long

proffers no evidence that recommending physical therapy instead of an

orthopedic consultation or recommending insoles instead of orthoses

created a serious risk to Long's health that was so obvious that Dinello

could not have believed that his recommendations were medically

justifiable.  *See, e.g.*, *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254,

261-62 (7th Cir. 1996) ("[D]eliberate indifference may be inferred based

upon a medical professional's erroneous treatment decision only when the

medical professional's decision is such a substantial departure from

accepted professional judgment, practice, or standards as to demonstrate

that the person responsible did not base the decision on such a

judgment.")  The fact that DOCCS granted Long's request for custom

11

orthoses in 2004, (Dkt. No. 112 ¶¶ 3-6), did not entitle Long to them in 2015.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . [t]he essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).  Nor did Dinello's departure from DOCCS' 2004 treatment method mean that Dinello acted with subjective recklessness.  *See, e.g.*, *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000) ("Not every physician will treat every ailment in exactly the same manner.  That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs.")  Finally, Long's statement that Dinello made his deferral determinations to retaliate against Long for filing multiple medical requests and grievances, (Dkt. No.112 ¶ 29), amounts to unfounded speculation: the record is devoid of any evidence that Dinello harbored ill will towards Long or had an incentive to base his determinations on anything other than medical judgment.  *See Conroy v. N.Y. State Dep't of Corr. Services*, 333 F.3d 88, 94 (2d Cir. 2003) ("'Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.'") (citation

12

omitted).  Therefore, because no reasonable jury could conclude that Dinello acted with subjective recklessness, Long's claim against Dinello fails as a matter of law.

## B.    Conditions-of-Confinement Claims

Long argues that the conditions of the ASAT dorm violated his Eighth Amendment rights because he was transferred to the dorm, and remained there for approximately six weeks, despite having a medical pass excusing him from programming; was required to participate in ASAT programming and perform cleaning duties; and was required to ambulate approximately 1/3 mile per day to access meals and medication.  (Dkt. No. 112 ¶ 30; Dkt. No. 112, Attach. 4 at 5-6.[5])

Defendants argue that the conditions complained of did not create an unreasonable risk of serious damage to Long's health.  (Dkt. No. 108, Attach. 9 at 6-8.[6])  Defendants contend that, to the extent that Long

---

[5] With respect to Long's conditions-of-confinement claims, Long's responsive memorandum of law makes no legal arguments beyond claiming that certain statements suffice to create a genuine issue of material fact.  (Dkt. No. 112 ¶¶ 26, 28, 30, 31; Dkt. No. 112, Attach. 2 ¶¶ 24-34, 36, 40.)

[6] Defendants also argue that Long is unable to establish that Doldo, Nitschke, or Taylor were personally involved and acted with a sufficiently culpable state of mind.  (Dkt. No. 108, Attach. 9 at 8-12.)  The court need not address these arguments because Long's failure to establish the objective requirement is fatal to his Eighth Amendment claims.

continued to experience pain, Long's discomfort was strictly attributable to his deteriorating medical condition, not any actions on the part of Cape Vincent staff.  (*Id.*)

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and a subjective requirement. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

To establish the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'"  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)).  This requirement is satisfied "only when [the conditions] have a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citations omitted); *see Walker*, 717 F.3d at 125 (noting that basic needs in prison include "food, clothing, medical care, and safe and sanitary living conditions") (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To establish the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with

'deliberate indifference.'"  *Jolly*, 76 F.3d at 480 (quoting *Wilson*, 501 U.S. at 297).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Long cannot establish the objective requirement.  Without more, Long's required participation in ASAT programming while possessing a medical pass to be "off programs until further notice," (Dkt. No. 112, Attach. 2 at Ex. 3), does not constitute an Eighth Amendment violation.  *Cf. Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he law is settled that the failure to follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim.") (citation omitted).  Although Long alleges that he experienced physical pain when he was required to participate in programming and perform cleaning duties at the ASAT dorm, (Dkt. No. 112 ¶¶ 28, 30), he does not proffer evidence about which aspects of which programs deprived him of a single, identifiable human need or unreasonably exacerbated his health ailments.  *See Davidson v. Murray*, 371 F. Supp. 2d 361, 373 (W.D.N.Y.

2005) (noting that the summary judgment burden is "not altered simply because plaintiff is a prison inmate who proceeded *pro se* through the first seven years of this litigation.  'At some point in a law suit even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief.'") (quoting *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986)) (emphasis in original).  Therefore, Long's generalized allegation of "physical plain" during unidentified programming activities, for unspecified durations, is insufficient to create a triable issue of fact.  *See Wilson*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") (citation omitted).

To be sure, Long cannot meet the objective requirement by pointing to inadequate medical care during his time at the ASAT dorm because the following facts are undisputed: Long had access to medical services through the usual call-out procedures, DOCCS medical staff examined and monitored Long's condition, DOCCS medical staff prescribed Long

multiple pain management medications, and DOCCS medical staff issued Long a walking cane.  (Dkt. No. 108, Attach. 8 ¶¶ 134, 78, 80, 77, 81, 163; Dkt. No. 112, Attach. 2 at Ex. 3.)  Ultimately, though Long disliked being assigned to the ASAT dorm and found it uncomfortable to ambulate approximately 1/3 mile per day for meals and medication, (Dkt. No. 112 ¶ 30), Long points to no evidence from which a reasonable jury could conclude that Long suffered unquestioned and serious deprivations of basic human needs.  *See Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.") (citation omitted); *Gonzales v. Carpenter*, 9:08-CV-629, 2011 WL 768990, at *13 n.9 (N.D.N.Y. Jan. 3, 2011) ("It is well-established that convicted prisoners have no right to choose the prison in which they are housed.") (citing *Montanye v. Haymes*, 427 U.S. 236, 243 (1976)); *Harrison v. Fischer*, No. 08-CV-1327, 2010 WL 2653629, at *27 (N.D.N.Y. June 7, 2010) (recognizing that "the ASAT program serves an important penological purpose").  Accordingly, because no reasonable jury could find that Long has satisfied the objective requirement, Long's conditions-of-confinement claims against

Doldo, Nitschke, and Taylor fail as a matter of law.

## C.   ADA and Rehabilitation Act Claims

Long argues that DOCCS' response to his February 2016 accommodation request failed to reasonably accommodate his disability. (Dkt. No. 112, Attach. 4 at 6-8.[7])  Long's request sought grab bars, higher toilets, medical treatment for his shoulder, seven or eight-inch soft-soled boots, orthotics for plantar fasciitis, and access to early-release programming.  (Dkt. No. 108, Attach. 6 at Ex. 3.)  Defendants contend that Long has failed to establish that the accommodations provided were

---

[7]  Long's memorandum opposing summary judgment also "respectfully requests that the [c]ourt consider all of the allegations against numerous DOCCS employees set forth [in] Plaintiff's Amended Compliant . . . even though these employees have been dismissed from the case pursuant to this Court's order dated November 18, 2019."  (Dkt. No. 112, Attach. 4 at 6 (citations omitted).)  The court declines this request because to properly oppose defendants' motion for summary judgment, Long must identify specific facts and affirmative evidence to demonstrate that there is a genuine issue for trial.  *See Celotex Corp.v. Catrett*, 477 U.S. 317, 323 (1986); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but *must instead offer some hard evidence* showing that [their] version of events is not wholly fanciful.") (emphasis added and citations omitted).  Therefore, because Long concedes that DOCCS policy required him to "submit a written request on a special form to seek reasonable accommodation for [his] serious medical conditions,"(Dkt. No. 112 ¶ 32), and because the record does not indicate that Long made any other written accommodation requests, the only relevant conduct is DOCCS' handling of Long's February 2016 request.  To the extent that Long introduces a declaration from William Murray asserting that DOCCS' employees "had a duty to submit a request for transfer to a handicapped facility . . .", (Dkt. No. 112, Attach. 2 ¶ 17), Murray fails to reference a specific directive or policy in place at Cape Vincent to support any such duty relieving Long of the need to submit a written request.  *See, e.g.*, *Walker v. City of New York*, 367 F. Supp. 3d 39, 51 (S.D.N.Y. 2019) ("[I]n this Circuit, a plaintiff generally bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial.") (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).

unreasonable.  (Dkt. No. 108, Attach. 9 at 20.[8])

To establish a prima facie violation under either Title II of the ADA or the Rehabilitation Act,[9] a plaintiff must show that (1) he is a qualified individual with a disability; (2) the defendant is subject to the act; and (3) he was discriminated against or denied the opportunity to participate in or benefit from the defendant's services, programs, or activities due to his disability.  *See Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021); *Wright v. N.Y. State Dep't Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016).  The parties only dispute the third requirement.  (Dkt. No. 108, Attach. 9 at 18 n.4.)

The third requirement can be met by showing that the defendant's failure to make a reasonable accommodation denied the plaintiff meaningful participation in prison services, programs, or activities.  *See*

---

[8] Defendants also contend that Long failed to proffer evidence that he was discriminated against because of his disability, and that Long's claims are barred by sovereign immunity.  (Dkt. No. 108, Attach. 9 at 21-24.)  However, the court need not reach these arguments because Long's failure to establish that the accommodations provided were unreasonable is dispositive.

[9] The Second Circuit has noted that, because "[b]oth the ADA and the R[ehabilitation Act] undoubtedly apply to state prisons and their prisoners," the subtle distinctions between the statutes are inapplicable in the context of prison litigation and "'we treat claims under the two statutes identically.'"  *Wright*, 831 F.3d at 72 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)); *see Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

*Wright*, 831 F.3d at 72.  To do so, the plaintiff must establish (1) that their proposed accommodation was reasonable, *Id.* at 76, and (2) that their "'disabilities were a substantial cause of their inability to obtain services.'" *Tardif*, 991 F.3d at 405 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003)).  To show that a proposed accommodation was reasonable, the plaintiff "bears the initial burdens of both production and persuasion as to the existence of an accommodation that is facial[ly] reasonable[]."  *Wright*, 831 F.3d at 76 (quoting *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015)) (internal quotation marks omitted and alterations in original).  The burden of persuasion then shifts to the defendant to "rebut the reasonableness of the proposed accommodation" by showing that "the proposed accommodation would cause [the defendant] to suffer an undue hardship."  *Id.* (quoting *Dean*, 804 F.3d at 190) (internal quotation marks omitted and alteration in original).  Nevertheless, a defendant is entitled to summary judgment if "'the undisputed record reveals that the plaintiff was accorded a 'plainly reasonable' accommodation.'"  *Id.* at 73 (quoting *Dean*, 804 F.3d at 189).

Here, DOCCS responded in a plainly reasonable manner to Long's

accommodation request because DOCCS moved Long to the infirmary

and gave him access to what he requested: grab bars, higher toilets, and

medical attention for his shoulder.  (Dkt. No. 108, Attach. 6 at Ex. 3); *see*

*Dean*, 804 F.3d at 188 ("It is axiomatic that a claim for failure to

accommodate does not lie where the accommodation received is the

accommodation the plaintiff requested.") (citation omitted).  Although

DOCCS denied Long's request for specific types of boots and orthotics,

(Dkt. No. 108, Attach. 6 at Ex. 3), this was a request for specific medical

treatment and decisions, based on medical judgment, regarding the

proper form of treatment are not actionable under the ADA or

Rehabilitation Act.  *See Tardif*, 991 F.3d at 405 (noting that neither act

covers "whether [the plaintiff] received adequate medical treatment in

police custody for [their disability] . . . [t]o hold otherwise would allow

inmates to litigate in federal court virtually every medical malpractice claim

arising in a custodial setting under the auspices of the ADA"); *Cercpac v.

Health & Hosps. Corp.*, 147 F.3d 165, 168 (2d Cir. 1998) ("[T]he

disabilities statutes do not guarantee any particular level of medical care

for disabled persons, nor assure maintenance of service previously

provided.").  Furthermore, Long's inability to attend programming while in

the infirmary, before being transferred to Wyoming, does not constitute a violation of the ADA or Rehabilitation Act.  First, Long adduces no evidence that it was facially reasonable for him to attend early-release programming while living in the infirmary and receiving medical treatment. Long's response memorandum expresses conclusory disagreement with defendants' position that Long has failed to raise a genuine issue of material fact regarding the merits of his ADA and Rehabilitation Act claims, but is devoid of any supporting evidence or substantive legal argument.  (Dkt. No. 112, Attach. 4 at 6-8); *see, e.g.*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (stating that at summary judgment, "the time has come . . . 'to put up or shut up'") (citations omitted).  Second, even if it was facially reasonable for Long to attend programming while at the infirmary, DOCCS' response to Long's request was plainly reasonable because, after moving Long to the infirmary where he had access to the handicap accessible accommodations he requested, DOCCS internally began evaluating how to accommodate both Long's medical and programming needs, ultimately deciding to transfer Long to Wyoming.  (Dkt. No. 108, Attach. 6 at 6-8.[10])  The approximate six-month

---

[10]  Citations refer to the pagination generated by CM/ECF, the court's electronic filing system.

delay in effectuating Long's transfer to Wyoming was also reasonable because Long had scheduled, and attended, ten medical appointments related to his orthopedic ailments and post-surgical care.  (*Id.* at 7-8; Defs.' SMF ¶ 189.)  Long's argument that he could have been transferred sooner and received similar treatment at Wyoming,(Dkt. No.112, Attach. 2 ¶ 40), is misguided: DOCCS' decision to treat Long through the scheduled appointments before transferring him is one of prison administration.  *See Wright*, 831 F.3d at 79 ("Indeed, in the prison context we often exhibit judicial restraint, 'noting that courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'") (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995)); *Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) ("[T]he hallmark of a reasonable accommodation is effectiveness, and . . . a reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff, but it still must be effective.") (quoting *Wright*, 831 F.3d at 72) (internal quotation marks omitted).  Accordingly, because DOCCS' response to Long's accommodation request was plainly reasonable, Long's ADA and Rehabilitation Act claims fail as a matter of law.

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment, (Dkt. No. 108), is **GRANTED** and the amended complaint, (Dkt. No. 27), is **DISMISSED**; and it is further

**ORDERED** that Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 12, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge